WALLACE, JUDGE:
Claimant 'filed this claim-against thé respondent for damages sustained by reason of a ward of the State wrecking his automobile.
The claimant was a welfare worker for Area 9 working out of respondent’s Grafton, West Virginia, office. He was a Social Worker IV in charge of the specialized foster care program. The Grafton area had received a Federal grant establishing specialized foster care, setting up eight foster homes for training foster parents to deal with problem children who had no success with institutional care. As part of the program, the claimant carried a limited caseload of eight in order to give intensive service in an attempt to bring about a change where normal foster care had not.
*49 Since July of 1979, the claimant had been working with a 17-year-old juvenile with a history of behavioral problems. At the time he was referred to the specialized foster care program, the juvenile was on probation as a result of an arson charge. Claimant saw him at least twice a week and sometimes daily. On April 21, 1980, the claimant picked up his ward at his foster home and took him to a motorcycle repair shop where the boy had applied for a job. After the visit to the repair shop, they stopped at the nearby welfare office. Claimant parked his automobile in the parking lot. The ward wanted to listen to the car radio, so the claimant left him with the keys and went into the office. After making several phone calls, the claimant returned to the parking lot and found that his automobile and his ward were gone. He later learned that the ward had taken the automobile and wrecked it. No charges were placed against the juvenile. The automobile, a 1975 Datsun B-210, was totalled. The book value at the time of the accident was $2,225.00, and wrecker charges were $88.00. Claimant testified that the salvage value of the automobile was $200.00. The claimant further testified that the respondent did not furnish him an automobile; that he was required to use his automobile in his work; and that he frequently counseled in it so that he could have more privacy. The respondent reimbursed the claimant for the use of his automobile at the rate of $.20 per mile and required the claimant to maintain liability insurance. The claimant did not have collision insurance.
The claimant testified that he had entrusted his ward with the keys to his automobile on previous occasions, but that this practice occurred late in his relationship with him. He stated that he was trying to teach the child responsibility and reliability, that he made the decision to trust him, and that no one instructed him to do so.
No evidence was introduced in this case with regard to any negligent behavior on the part of the respondent. The record indicates that the claimant was well aware of the juvenile’s behavior problems. Nevertheless, he permitted the boy to remain alone in his car with the keys in it. Claimant therefore assumed the risk of any loss which resulted. Claudine Hinkle v. Department of Welfare, 13 Ct.Cl. 199 (1980). *50 This negligent act on the part of the claimant himself, in leaving his vehicle ready for anyone to convert to his own use, was the proximate cause of any subsequent harm done to the vehicle. LePera v. Department of Corrections, 13 Ct.Cl. 49 (1979. Accordingly, this claim must be denied.
Claim disallowed.